Willie James Williams was indicted for five separate cases of forgery in the first degree and one case of possession of a forged instrument. By agreement of counsel, four forgery cases and the possession of a forged instrument case were consolidated and tried by a jury which found the appellant guilty as charged in each case.[1] A sentencing hearing was held wherein the trial judge sentenced the appellant to four terms of life imprisonment pursuant to the Alabama Habitual Felony Offender Act. A second trial was held on the remaining forgery in the first degree indictment and the jury found the appellant guilty as charged. The trial judge sentenced the appellant, after a full hearing, to life imprisonment pursuant to the Alabama Habitual Felony Offender Act, said sentence to run concurrently with his previous convictions.
It should be noted that the appellant does not challenge the weight and sufficiency of the evidence, thus rendering a complete dissertation of the facts unnecessary. We will set out only those facts necessary for a discussion of the appellant's issues of error.
This appeal arises from the appellant's conviction of taking a variety of checks, issued to various owners, from said owners' mailboxes, forging the name of the owner on the check, and causing said checks to be cashed in various stores.
Appellant's counsel submitted a motion to suppress statements made by the appellant, while in custody, prior to trial of the cases. The trial judge held a hearing on the motion to suppress before trial of the cases began. *Page 854 
Perry Owings testified that he was employed as a detective with the Selma Police Department. He stated that he was in charge of investigating a case involving a check from the Dallas County School Board payable to one Mary Davis. He stated that the appellant was arrested, pursuant to this investigation, at his home in the early morning hours of November 16, 1982.
Detective Owings testified that he conducted an "interview" of the appellant while he was in jail. He stated that he told the appellant he had been charged with possession of a forged instrument and read the appellant his Miranda warnings. He further stated that the appellant signed the waiver of rights and gave a statement. He stated that neither he, nor anyone else had offered the appellant any hope of reward or promised him anything. He further stated that the appellant was not coerced into making a statement by anyone. Detective Owings stated that in this statement the appellant told him that he had taken the check from a mailbox while he was delivering papers; the appellant stated that he took the check to a local appliance store, forged the name on the back, and paid on an account at the store, getting cash on what was left after payment of the account.
Detective Owings further testified that this statement was tape recorded and transcribed by his secretary. He stated that this transcribed statement was shown to the appellant, who read the statement, corrected mistakes, and signed the statement.
Randy Melvin testified he was employed as a special agent with the United States Secret Service, Montgomery, Alabama. He stated that he met with the appellant and Officer Steve Tidwell at the Selma Police Department on November 17, 1982. He stated that he told the appellant he wanted to talk to him about some U.S. Treasury checks and then advised the appellant of his Miranda
rights. He stated that the appellant indicated he understood those rights and was willing to cooperate and talk. Agent Melvin stated that he procured handwriting samples from the appellant, then took a statement. In this statement the appellant admitted taking, signing, and cashing a number of checks. Agent Melvin stated that this statement was written down and signed by the appellant, Officer Steve Tidwell, and Melvin.
Agent Melvin testified that no one offered the appellant any promise or hope of reward, nor did anyone coerce the appellant, in any way, to make the statement. He stated that the appellant asked him many times how the case was going to be handled. He stated that he told the appellant it was another agent's decision to make. He further stated that no one told the appellant they would speak to the District Attorney or a judge about the case. He did state, however, that he told the appellant "if he cooperated it would be made known to the proper authorities that he cooperated." (R. 38, 157).
Steve Tidwell testified that he was employed as a detective with the Selma Police Department. He stated that he was present when Agent Melvin interviewed the appellant on November 17, 1982, and when Agent McCorkle interviewed the appellant on November 30, 1982. He stated that no one offered the appellant any hope of reward, nor did they coerce him to make a statement. He stated no one made any specific representation that they would talk to a judge or district attorney about the case, nor did they tell him he would not be charged with other cases if he talked with them.
Officer Tidwell stated that Miranda warnings were given, the appellant agreed to talk, and written statements were taken and signed by the appellant.
The appellant testified that Officer Owings told him if he would cooperate, Owings would talk to the District Attorney and judge in his behalf. He stated that he was again interviewed, by Agent Melvin and Officer Tidwell. He stated that Tidwell told him he would have "to pay the state checks back and that the federals would drop their checks if I go ahead and give statements." (R. 54) He stated that *Page 855 
he then told them he had taken twenty more checks.
The trial court denied the motion to suppress the statements at the close of all the testimony.
 I
The appellant contends that the trial court erred in admitting into evidence a confession he made to police officers. He specifically argues that his statement was involuntary because he was coerced into making the statement by promise of reward.
 (A)
When the evidence on the circumstances surrounding the appellant's confession is conflicting, the trial judge must determine its admissibility. If admitted, then the controverted testimony for the appellant goes to the jury on the confession's credibility. Where the trial judge finds on conflicting evidence that the confession was voluntarily made, its finding will not be disturbed on appeal unless found to be manifestly contrary to the great weight of the evidence. Wiggins v. State, 440 So.2d 1164
(Ala.Crim.App. 1983); Raines v. State, 428 So.2d 206
(Ala.Crim.App. 1983); Snider v. State, 422 So.2d 807
(Ala.Crim.App. 1982); Harris v. State, 420 So.2d 812
(Ala.Crim.App. 1982); Hardy v. State, 409 So.2d 996
(Ala.Crim.App. 1982), Bennett v. State, 409 So.2d 936
(Ala.Crim.App. 1981), cert. denied, 457 U.S. 1137,102 S.Ct. 2968, 73 L.Ed.2d 1356 (1982). In this cause, the trial judge held the appellant's confession to be voluntary and admissible and this decision was not contrary to the great weight of the evidence.
 (B)
The appellant contends that he was coerced into making the confession by Agent Melvin. He argues Melvin stated that if the appellant was willing to cooperate he would make it known to the proper authorities and such statement rendered his subsequent confession involuntary.
In this case, Agent Melvin's statement was not the equivalent of urging him to confess or to admit guilt. This court has held that a "promise to bring an accused's cooperation to the prosecutor's attention does not necessarily render a subsequent confession involuntary." Wallace v. State, 290 Ala. 201,275 So.2d 634 (1973); Tanner v. State, 57 Ala. App. 254, 327 So.2d 749
(1976); Moss v. State, 347 So.2d 569 (Ala.Crim.App. 1977);Bennett v. State, 409 So.2d 936 (Ala.Crim.App. 1981), cert. denied, 457 U.S. 1137, 102 S.Ct. 2968, 73 L.Ed.2d 1356 (1982);Williams v. State, [Ms. 6 Div. 761, May 31, 1983] (Ala.Crim.App. 1983); Jemison v. State, 439 So.2d 786 (Ala.Crim.App. 1983).
Moreover, in United States v. Frazier, 434 F.2d 994 (5th Cir. 1970), it was held:
 "Frazier's confession was not involuntary by reason of the single fact that the F.B.I. agents told him if he cooperated with them his cooperation would be made known to the United States Attorney, that there might be some consideration given by the United States Attorney but that the agents could make no promises. Standing alone this was not sufficient to establish that appellant's in-custody statement was involuntary."
This quoted statement from Frazier has been approved and applied by this court. See Wallace v. State, supra; Tanner v. State, supra; Moss v. State, supra; Bennett v. State, supra. See also,United States v. James, 495 F.2d 434 (5th Cir. 1974); UnitedStates v. Ballard, 586 F.2d 1060 (5th Cir. 1978); United Statesv. Jimenez-Diaz, 659 F.2d 562 (5th Cir. 1981).
After a review of the record on this point, we must hold that Agent Melvin's statement did not render the confession involuntary. The appellant's will was not overborne in this case, notwithstanding his claim to the contrary.
 II
The appellant contends that the Alabama Habitual Felony Offender Act is unconstitutional as applied to him, and as such, the *Page 856 
law is in violation of due process and constitutes cruel and unusual punishment.
The record discloses that the appellant was given due notice of the State's intention to proceed under the Act and that a full hearing was conducted by the trial court, following trial, before sentencing was imposed in this cause.
The State properly presented the appellant's prior felony convictions, which were: (1) Burglary, second degree (three cases); (2) Grand larceny; and (3) Embezzlement.
This court has upheld the constitutionality of the Alabama Habitual Felony Offender Act in a plethora of cases, and continues to do so on this appeal. Watson v. State,392 So.2d 1274 (Ala.Crim.App.), cert. denied, 392 So.2d 1280 (Ala. 1980);Serritt v. State, 401 So.2d 248 (Ala.Crim.App.), cert. denied,401 So.2d 251 (Ala. 1981); Smith v. State, 401 So.2d 251
(Ala.Crim.App.), cert. denied, 401 So.2d 257 (Ala. 1981); Ingramv. State, 437 So.2d 128 (Ala.Crim.App. 1982); Jackson v. State,440 So.2d 1181 (Ala.Crim.App. 1983).
Furthermore, this court has held that sentencing under this Act does not constitute cruel and unusual punishment, and we find no merit in appellant's contention in this cause that such sentencing, as applied to him, constitutes such cruelness as to render it unconstitutional. Watson v. State, supra; Serritt v.State, supra; Smith v. State, supra; Bates v. State,405 So.2d 1334 (Ala.Crim.App.), cert. denied, 405 So.2d 1339 (Ala. 1981);Butler v. State, 439 So.2d 210 (Ala.Crim.App. 1983); Jackson v.State, supra; Willis v. State, 441 So.2d 1030 (Ala.Crim.App. 1983). See also, Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133,63 L.Ed.2d 382 (1980); Serritt v. Alabama, 731 F.2d 728 (11th Cir. 1984).
As required by Solem, Warden v. Helm, 463 U.S. 277,103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), we have considered the proportionality of the punishment herein expressed, both in light of the appellant's prior record and the length of the sentence for the offense for which the appellant has been convicted. We find the sentence herein imposed to be in keeping with the statute[2], and Solem furnishes no authority for disturbing such sentencing in this cause. Weaver v. State, 437 So.2d 626
(Ala.Crim.App. 1983); Minor v. State, 437 So.2d 651
(Ala.Crim.App. 1983); Jackson v. State, supra; Pickens v. State,447 So.2d 867 (Ala.Crim.App. 1984); Jones and Bryant v. State, [Ms. 1 Div. 675, March 20, 1984] (Ala.Crim.App. 1984); Serritt v.Alabama, supra.
Moreover, as long as the sentence imposed is within the statutory boundaries, this court will not overturn the decision of the trial court unless there is clear abuse. Blaylock v.State, 411 So.2d 1299 (Ala.Crim.App. 1982); Tombrello v. State,421 So.2d 1319 (Ala.Crim.App. 1982).
The remaining issues propounded by the appellant are without merit.
We have carefully examined the record in this cause and in view of the foregoing principles of law, we find no cause for reversal.
The judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.
[1] At the sentencing hearing, the charge of possession of a forged instrument was dismissed.
[2] Although the sentence imposed is long, it should be remembered that such is not as harsh as it seems since possibility of parole exists and is in the hands of the Parole Board to act on in appellant's behalf. *Page 857